GARY RESTAINO
United States Attorney
District of Arizona
MARIA R. GUTIERREZ
Arizona State Bar No. 026659
BRANDON M. BROWN
Arizona State Bar No. 028892
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Maria.Gutierrez@usdoj.gov
Email: Brandon.Brown3@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | 24-MJ-02409-JFM |
| Plaintiff, | |
| vs. | **UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION** |
| Jorge Adan Garcia Martinez, | |
| Defendant. | |

The United States requests that the Court detain the Defendant Jorge Adan Garcia Martinez pending trial because he is a flight risk and a danger to the community.

The Defendant is the leader of a *sicario* group who call themselves *Fuerzas Especiales Jackson* that operates in San Luis, Sonora, Mexico. Under the leadership of the Defendant, members of *Fuerzas Especiales Jackson* committed acts of violence including violent interrogations, shootings, executions, and dismemberment of bodies in San Luis, Sonora. Some of these acts of violence were recorded and saved in the Defendant's telephone. Messages on the Defendant's telephone also show he was coordinating a retaliatory attack for the deaths of three members of *Fuerzas Especiales Jackson* who were killed during shooting(s) in San Luis, Sonora, on September 27, 2024. To prevent further

violence in San Luis, Sonora, the Defendant was arrested on October 7, 2024, in the Yuma-area for the firearms offenses in this case.

In regard to firearms, between 2023 and 2024, the Defendant was coordinating the straw purchase and smuggling of firearms into Mexico. The Defendant procured the firearms and ammunition for a faction of the Sinaloa Cartel, a violent criminal organization operating in Mexico. He was charged by Complaint on October 7, 2024, for attempting to smuggle firearms and ammunition on July 21, 2024. Further, the Defendant's ties to San Luis, Sonora, outweigh his ties to the United States. He is facing a significant sentence if he is convicted; thus, he has a strong incentive to flee and avoid prosecution and incarceration. Because the Defendant poses a significant danger to the community and is a substantial flight risk, the United States requests that the Defendant be detained pending trial as a flight risk and danger to the community.

*FACTUAL AND PROCEDURAL BACKGROUND*

As alleged in the Complaint (Doc. 1), on June 21, 2024, officers with Customs and Border Protection (CBP) interdicted a Chevrolet Astro as it attempted to enter Mexico at the port of entry in San Luis, Arizona. CBP officers found five firearms and ammunition hidden in the vehicle.

Agents with Homeland Security Investigations (HSI) and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) who were conducting surveillance, also stopped the individual who delivered the firearms to the driver of the Chevrolet Astro ("Co-conspirator 1"). Post-*Miranda*, Co-conspirator 1 admitted to purchasing firearms for other individuals in exchange for $100 per firearm and admitted to purchasing the firearms found in the Chevrolet Astro.

The driver of the Chevrolet Astro ("Co-conspirator 2") was also interviewed. Post-*Miranda*, Co-conspirator 2 said that an individual he knows as "Jackson" provided him with an address in Mexico where he could pick up $1,500 to bring to the United States. Co-conspirator 2 said he gave the money to Co-conspirator 1. After receiving the firearms, Co-conspirator 2 said he texted "Jackson" who told him to take the firearms to an individual

in San Luis, Mexico.  Co-conspirator 2 provided law enforcement with a Facebook account "HJ Jackson," an Instagram account "bobby_jackson_17," and telephone numbers used by "Jackson."  Co-conspirator 2 also consented to a search of his telephone.  Facebook messages in the telephone show that an individual using the moniker "Jackson HJ" was coordinating the delivery of the firearms that were seized from Co-conspirator 2.  The Facebook messages also show that Co-conspirator 2 and "Jackson HJ" were recruiting individuals to straw purchase firearms.

In addition to conversations about acts of violence in San Luis, Sonora, Co-conspirator 2's telephone also contained two videos sent to Co-conspirator 2 by "Jackson HJ."  Exhibit 1[1] is a video that shows the Defendant using a machete to dismember a body and dumping pieces of the body into a makeshift gravesite in the desert.  The Defendant is wearing a shirt with the word "Kool" printed across the chest.  Other unknown individuals are also involved.  Exhibit 2 is a video of unknown males dismembering the body of a male and dumping the body into a makeshift gravesite in the desert.

*Identification of the Defendant as "Jackson"*

The profile picture for the Instagram account "bobby_jackson_17" identified by Co-conspirator 2 showed the Defendant who agents recognized from a previous encounter on April 12, 2023.  On that day, the Defendant was stopped by law enforcement after dropping off Juan Carlos Yanez Molina[2] who purchased two rifles from an FFL in Somerton, Arizona.  Post-*Miranda*, the Defendant said that he drove Molina to FFLs to purchase firearms. Three firearms purchased by Molina were in the vehicle, including the two purchased earlier that day.  The Defendant consented to the seizure of the firearms.

*Defendant's Interview and Seizure of Defendant's Telephone*

---

[1] The exhibits will be filed under seal to protect the privacy of the victims' and their families as well as any possible ongoing investigation in Mexico.

[2] Molina was charged separately.  He was sentenced earlier this year.

On September 30, 2024, the Defendant was referred to secondary vehicle inspection as he tried to enter the United States from Mexico at the port of entry in San Luis, Arizona. Agents spoke to the Defendant to advise him of a credible threat to his life. The Defendant was advised that he was not under arrest. The Defendant was also interviewed by agents. During the interview the Defendant said that his nicknames were "Baby," "Adan," and "Jackson." The Defendant's telephone was seized, and the Defendant was released.

*The Defendant's Telephone*

On October 4, 2024, the Honorable James F. Metcalf, Magistrate Judge, District of Arizona, issued a warrant to search the Defendant's telephone. Messages found in the telephone included discussions with another individual about a rival group killing three and injuring five of the Defendant's *sicarios*. The attack occurred in San Luis, Sonora, on September 27, 2024. The messages also discussed the need to retaliate for the attack.

In addition to conversations about acts of violence, the following videos were found in the Defendant's telephone:[3]

1. Exhibits 3-5: Masked and unmasked males with firearms saying *"Gente Nueva Salazar"* (translated to "New People Salazar") and *"Gente de Jackson"* (translated to "Jackson's People");

2. Exhibit 6: Defendant shooting an AK-style rifle that appears to be automatic;

3. Exhibit 7: Defendant and unknown male shooting AK-style rifles;

4. Exhibits 8-10: Large quantities of suspected counterfeit oxycodone M30 pills that typically contain fentanyl being unloaded (Exhibit 8), vacuum sealed (Exhibit 9), and displayed in bulk (Exhibit 10);

5. Exhibits 11-12: Firearms, a wooden paddle, and a vest with *"Fuerzas Especiales Jackson"* (translated to "Jackson Special Forces") embroidered on it;

---

[3] This is a sample of the videos in the Defendant's telephone that involve criminal activity.

6. Exhibits 13-15: AR and AK style rifles (some with extended clips and laser sights), and wooden paddle;

7. Exhibit 16:    Multiple males dressed in black in a vehicle with AR-style assault rifles;

8. Exhibit 17:  Male who appears to be restrained with his wrist bound behind his back and his face covered with a sweatshirt in a vehicle;

9. Exhibits 18:  Males with assault rifles standing over a male restrained with duct tape wrapped around his eyes, wrists, and ankles;

10. Exhibit 19: Interrogation of restrained male in Exhibit 18

11. Exhibit 20:  Interrogation of restrained male with blood on his face and zip-tied wrists;

12. Exhibits 21-22:  Interrogation of juvenile male at gunpoint restrained with duct tape (shadows of the firearms are visible on the floor next to the juvenile and the firearms themselves are briefly visible at times). The Defendant is present in Exhibit 22 wearing a Joker mask;

13. Exhibits 23:  Interrogation of male bleeding from his head and being slapped at gunpoint, beheading, and mutilation of the body;

14. Exhibit 24: Restrained male from Exhibit 23 being asphyxiated with a trash bag, slapped, and interrogated;

15. Exhibit 25: Male that appears to be alive at beginning of the video being hacked repeatedly with a machete and having his stomach cut open

16. Exhibits 26-27: Attempted beheading and dismsmberment of a male that appears to be alive at the beginning of the Exhibit 26;

17. Exhibit 28:  Shooting at a residence with shooter saying, *"muerto, muerto, muerto"* (translated to "dead, dead, dead");

18. Exhibit 29:  A male exiting a car, approaching a victim, and shooting the victim nine times as close range;

19. Exhibit 30:  Shots heard and two males running towards individual taking the video;

20. Exhibit 31:  A male exiting a car, walking up to a residence, firing a handgun multiple times, and running back to the car;

21. Exhibit 32:  Execution of a male (on his knees, shot in the back of the head) at a house.  A second individual appears to be dead on the floor; and

22. Exhibit 33:  Dumping and possible execution of a restrained male (bound and shot in the head several times).

*Defendant's Post-Miranda Interview*

To prevent further acts of violence, the Defendant was arrested on October 7, 2024, for violations of 18 U.S.C. §§ 554 and 2, Smuggling Goods from the United States.  The Defendant told agents that his nicknames were "Baby" and "Jackson."  He also told agents that he lives in Arizona, but his parents were in Mexico.  He also claimed that he drives tractors and works at a ranch although he was unable to identify the name of the ranch.

Post-*Miranda*, the Defendant admitted to being involved in straw purchasing firearms and firearms smuggling.  He said that he finds straw purchasers and individuals to smuggle the firearms into Mexico.  He said that he has been involved in smuggling about 30 to 40 rifles and 30 pistols.  He said that the firearms are sent to Sinaloa.  He said that he successfully smuggled firearms into Mexico about 27 times.

The Defendant also said that he oversees an armed group known as *"Fuerzas Especiales Jackson."*  The Defendant admitted that he ordered vest patches with *"Fuerzas Especiales Jackson"* for his *sicarios*.  According to the Defendant, the *sicarios* get paid about $400 every two weeks for their services.  He said that his *sicarios* were involved in the shootings in San Luis, Sonora, on September 27, 2024.  The Defendant confirmed that he was planning to retaliate in response to the September 27 shootings.  Although the Defendant admitted to receiving orders to coordinate 20 to 30 killings and sending videos of the killings to others, he claimed that he was only present in the killing of the individual where the Defendant has a machete (Exhibit 1).  The Defendant admitted to dismembering the body with a machete.

The Defendant had his initial appearance in Yuma on October 8, 2024. In the second addendum filed to the Pretrial Services Report (PTSR) (Doc. 9), Pretrial Services (PTS) believes that the Defendant is flight risk and danger to the community but believes that he can be released on conditions. The PTS cites the Defendant's biweekly travel and strong family ties, and prior residence in Mexico to support its assessment that the Defendant is a flight risk. PTS adds that mental health and substance abuse issues as well as his lack of residence in the United States aggravates his risk of flight. PTS cites the nature of the alleged offense, and mental and substance abuse issues as reasons why the Defendant is a danger to the community. The United States disagrees that the Defendant be released on conditions.

A detention hearing is scheduled on October 28, 2024.

*DETENTION HEARING STANDARD*

On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and clear and convincing evidence that the defendant poses a danger to the community. *United States v. Gebro*, 948 F.2d 1118 (9th Cir. 1992); *United States v. Motamedi*, 767 F.2d 1403, 1406-07 (9th Cir. 1985). It is well-settled that the government may proceed in a detention hearing by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) ("The circuit courts that have interpreted 18 U.S.C. § 3142(f) have uniformly made it clear that the government may proceed by proffer at a detention hearing under the Bail Reform Act of 1984.") Consequently, "there is no requirement of live testimony by the government at a detention hearing." *Cabrera-Ortigoza*, at 574.

*18 U.S.C. § 3142(g) Factors*

**1. Nature and Circumstances of the Charged Offense:**

The seriousness of the offense charged at this time weighs heavily in favor of detention. The Defendant was charged with smuggling firearms and ammunition from the United States. The Defendant was using straw purchasers to obtain firearms that were later

smuggled into Mexico, arguably to fuel criminal activity perpetuated by criminal organizations operating in Mexico.  The Defendant recruited and coordinated straw purchasers and smugglers of firearms and ammunition.  As evidence, we have messages between the Defendant and coconspirators, and the Defendant's own admissions.

The Defendant is facing up to ten years of imprisonment, up to three years of supervised release, and a fine of up to $250,000.  The possibility of a years-long sentence is strong motive for the Defendant to flee.  The seriousness of the offense weighs heavily in favor of detention.

**2.  Weight of the Evidence:**

The weight of the evidence is generally considered the "least important" of the four factors, *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985), but "[i]t is a factor nonetheless," *United States v. Tooze*, 236 F.R.D. 442, 447 (D. Ariz. 2006).  Here, the evidence against the Defendant is overwhelming.

The evidence in this case is comprised of messages between the Defendant and conspirators.  The messages show the Defendant coordinating the delivery of the firearms that Co-conspirator 2 was ultimately caught with at the port of entry as he tried to smuggle firearms and ammunition into Mexico.  Post-*Miranda*, the Defendant admitted to recruiting straw purchasers and individuals to smuggle the firearms into Mexico.  He also admitted to successfully smuggling about 60 to 70 firearms and doing so about 27 times.  This factor weighs in favor of detention.

**3.  History and Characteristics of the Defendant:**

The Defendant is a significant flight risk as he has minimal ties to the United States. He travels to Mexico on a biweekly basis.  (PTSR dated October 8, 2024.)   His mother and other members of his family live in Mexico. *Id.* The Defendant's girlfriend lives in Mexico. (*Id.)*  According to PTS, he lived with a family member in the Yuma-area, but he is no longer welcome at that home (Doc. 6).  Based on his post-*Miranda* statement, he appears to lack steady employment in the United States and is he enrolled in school (PTSR dated October 8, 2024).   Based on the information in his telephone, it appears that he has

significant social ties in Mexico.   PTS noted that the Defendant has mental and substance abuse issues that increase the risk of non-appearance.  (Doc. 9.)  While Defendant does not have any criminal history in the United States, the video in from his phones and his admissions show that he is the leader of the *Fuerzas Especiales Jackson,* a violent *sicario* group that has shot, butchered, and killed multiple victims in Mexico.  October 8, 2024.) This factor weighs in favor of detention.

**4.   Nature and Serious of Danger to the Community:**

The Defendant was involved in a scheme to recruit straw purchasers and individuals to smuggle firearms and ammunition to Mexico to, arguably, fuel criminal activity perpetuated by criminal organizations.  The Defendant admitted that he had a group of *sicarios* who call themselves *Fuerzas Especiales Jackson*[4] to commit acts of violence at the request of others.  He admitted to coordinating about 20 to 30 killings in Mexico.  He admitted that he was present in at least one killing and dismembering one body with a machete.  He admitted that the *sicarios* in this group were paid for their services.   He admitted that he was planning to retaliate for the September 27 shootings that left three of his *sicarios* dead and injured others.

The videos of the violent acts in the Defendant's telephone are gruesome and shocking.   The videos show restrained individuals being interrogated.   Some of the individuals appear to have been physically assaulted or are physically assaulted in the videos.  Other videos show *sicarios* going to residences and shooting individuals.  Yet other videos show *sicarios* beheading, mutilating, and dismembering the bodies of their victims.   The videos also clearly show that the individuals committing these acts of violence are members of *Fuerzas Especiales Jackson*, which is the group of *sicarios* headed by the Defendant.   Moreover, the Defendant was planning to retaliate for the September 27 shootings when he was arrested in connection with the instant offense.  The

---

[4] The United States notes that "Jackson" is the Defendant's nickname.

United States arrested the Defendant to prevent the Defendant from committing further acts of violence in Mexico.  Based on the video evidence and the Defendant's admissions, he is a danger to the community and should be detained.  This factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons discussed, the United States requests that this Court order the Defendant detained because a preponderance of the evidence shows that he is a flight risk, and the evidence is clear and convincing that he is a danger to the community.

Respectfully submitted this 24th day of October, 2024.

GARY RESTAINO
United States Attorney
District of Arizona

*s/Maria R. Gutierrez*
Maria R. Gutierrez
Brandon M. Brown
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Taylor Fox, Attorney for the Defendant.

*s/Carlton Covington*
U.S. Attorney's Office